**UNITED STATES of America, Plaintiff,**

v.

**John W. GRAY, Defendant.**

**Crim. A. No. 87–274–C.**

United States District Court,
D. Massachusetts.

March 17, 1989.

Paul Kelly, for the U.S.

James F.X. Dineen, Vena, Truelove & Lahey, Boston, Mass., for John W. Gray.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

CAFFREY, Senior District Judge.

The following constitute the Court's Findings of Fact and Conclusions of Law

on the government's motion to vacate the amended judgment and reinstate the defendant's original sentence.

## I. FINDINGS OF FACT

1. On January 6, 1988, the defendant, John W. Gray, pled guilty to three counts of a superseding indictment charging credit card fraud in violation of 18 U.S.C. § 1029(a)(2). On February 23, 1988, this Court sentenced the defendant to a one-year prison term on each count, to be served concurrently. The defendant was immediately taken into custody by the United States Marshal.

2. In early March 1988, the Federal Bureau of Prisons determined that the defendant should serve his sentence at the Northeast Correctional Center ("NCC"), which is located adjacent to the Massachusetts Correctional Institution at Concord, Massachusetts ("MCI–Concord"). The defendant was housed temporarily at the Federal Correctional Institution at Otisville, New York, while this designation was made.

3. On March 14, 1988, the defendant was transported by United States Marshals from Otisville to MCI–Concord, where all NCC inmates are first processed. He arrived late in the day and was placed in temporary quarters until he could be processed the following morning.

4. On the morning of March 15, 1988, Gray was processed at MCI–Concord. This involved being fingerprinted and photographed and receiving a physical examination at the infirmary. After the processing was completed, Gray was transported across the street to NCC in order to begin serving his federal prison sentence.

5. Two weeks later, on March 29, 1988, United States Probation Officer Frederick Ford received a telephone call from Gray's mother. During their conversation, Mrs. Gray informed Ford that her son had told her that he had been anally raped by an inmate at MCI–Concord while he was forcibly restrained by two correctional officers.

6. Two days later, on March 31, 1988, Ford and Gardner Spencer, Community Program Manager of the Bureau of Prisons, travelled to NCC in order to interview Gray concerning the alleged assault.

7. Ford and Spencer met with Gray in an empty classroom at NCC. NCC guards occasionally appeared at the door during their discussion. At first Gray apparently assumed Ford and Spencer had come to discuss possible transfer to Otisville. When the two men told Gray his mother had related the alleged assault to them, Gray broke down and reluctantly told them the story.

8. Gray informed Ford and Spencer that while he was being processed at MCI–Concord on the morning of March 15, 1988, two uniformed correctional officers in the fingerprint processing room restrained him while an inmate assaulted him. Transcript of Hearing on Government's Motion to Vacate Amended Judgment, Dec. 20, 1988, at 133.

9. After conferring between themselves, Ford and Spencer determined that they believed Gray's story and that it would be appropriate to immediately remove Gray from NCC. Spencer signed Gray out of the institution and the three returned to the federal courthouse in Boston in Ford's automobile.

10. Once back in the courthouse, Gray and Ford discussed the matter with Thomas Weadock, Chief United States Probation Officer. Mr. Weadock directed Gray to write a letter to this Court stating what had happened and the action he requested. Gray wrote: "To the Honorable Judge Caffrey. I, John Gray, would humbly ask that you consider my request for a sentence change to probation. While in the custody of MCI Concord I was raped. Thank you for considering this request. Thank you, John Gray."

11. Mr. Weadock presented the matter and Gray's letter to this Court and, on March 31, 1988, we amended Gray's sentence, allowing credit for time served and placing him on probation for two years.

12. On or about April 1, 1988, the United States Attorney's Office first became aware of Gray's allegations and the amended judgment. Assistant United States At-

torney Paul V. Kelly, who had prosecuted Gray on the original credit card fraud charges, immediately contacted the Federal Bureau of Investigation and requested that it initiate a civil rights investigation into Gray's allegations. Special Agents Edwin Goedde and Ellen Kearns were assigned to the task.

13. During the following months the FBI conducted a detailed investigation. The Special Agents interviewed Gray, Ford, several correctional officers and prison personnel at MCI–Concord, and certain medical practitioners. They toured the MCI–Concord and NCC facilities, examined prison documents and records, and conducted polygraph examinations of Gray and one of the suspect correctional officers, Donnell Graves.

14. At the completion of the investigation, Special Agent Goedde filed a report, dated May 27, 1988, that concluded that:

[I]t should be noted that [MCI–Concord] was originally constructed to handle 250 inmates. At the present time there are 788 inmates being supervised by 207 correctional officers.

Because of the obvious overcrowding and understaffing it is conceivable for anything to have occurred there. But the probability of the victim having been raped in the manner, time, and place he said, is extremely remote....

15. Based on the results of the FBI investigation, on October 15, 1988 the United States Attorney's Office filed a motion to vacate the amended judgment and reinstate Gray's original sentence, based on its belief that "sentence modification was obtained fraudulently by the knowing and intentional misrepresentations of defendant John W. Gray."

16. On December 20, 1988, this Court held an evidentiary hearing on the government's motion. Gray was represented by appointed counsel. The Court heard testimony from eight witnesses, including the transvestite-inmate who Gray alleged had raped him, the two correctional officers who Gray alleged had forcibly restrained him, and the physician's assistant who examined Gray, as part of the standard pro-cessing of new inmates, within one hour of the alleged assault. Thirteen exhibits were also introduced into evidence.

17. The physician's assistant testified that her records showed that on the day and within hours of the alleged assault, the defendant's blood pressure was 110/80, his heart rate was 60, and he showed no signs of recent trauma.

18. The inmate identified by the FBI Special Agents as the most likely suspect in the alleged rape testified that he had been taking estrogen, the female hormone, for some time and that this made it impossible for him to have an erection.

19. Based on all the evidence presented and a careful review of the record, this Court is satisfied beyond doubt that Gray perpetrated a fraud on the United States Probation Department and this Court. We have found little evidence that supports Gray's allegations and overwhelming evidence upon which we must conclude that while Gray may have come in contact with the correctional officers and inmate he described, no assault or rape occurred at MCI–Concord on the morning of March 15, 1988.

## II. CONCLUSIONS OF LAW

■ 1. "[T]here is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *United States v. Di Francesco,* 449 U.S. 117, 137, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980). A district court has inherent authority to set aside a judgment obtained by fraud. *Hazel–Atlas Glass Co. v. Hartford Empire Co.,* 322 U.S. 238, 244–45, 64 S.Ct. 997, 1000–1001, 88 L.Ed. 1250 (1944).

■ 2. The authority of the Court to correct judgments obtained by fraud applies to criminal, as well as to civil cases, and is not limited by Rule 35(b) of the Federal Rules of Criminal Procedure. *See United States v. Bishop,* 774 F.2d 771, 774 n. 5 (7th Cir.1985) ("The fact that this case involves a fraud perpetrated upon the court during the criminal sentencing process rather than during a civil proceeding, such as in *Hazel–Atlas,* does not change the

result. It is the power of the court to correct the judgment gained through fraud which is determinative and not the nature of the proceeding in which the fraud was committed."); *United States v. Ecton*, 454 F.2d 464, 466 (9th Cir.1972) (*"Trueblood Longknife v. United States*, 381 F.2d 17 (9th Cir.1967), is authority for the proposition that a probation granted as a result of a fraudulent concealment may be revoked in the absence of any post-probation violation."); *United States v. Rundle*, 435 F.2d 721 (3d Cir.1971) ("The receipt of a probationary sentence is not a right guaranteed by the federal constitution, but it is a privilege granted through legislative grace.").

3. Pursuant to the Sentencing Reform Act, 18 U.S.C. § 3564(e), "[a] sentence of probation remains conditional and subject to revocation until its expiration or termination."

■ 4. The United States Attorney's minimal delay in bringing its Motion to Vacate the Amended Judgment does not constitute negligence where, as here, the sentence of probation had not expired and the Court thus retained jurisdiction over the defendant.

■ 5. Revocation of probation and reinstatement of the original sentence is proper when a defendant has obtained a modified sentence through his deliberate fraud. *See* Annotation, *Revocation of Probation Based on Defendant's Misrepresentation or Concealment of Information from Trial Court*, 36 ALR 4th 1182 (1985).

■ 6. In conducting the hearing on this matter, the Court followed the provisions of Rule 32.1(a)(2) concerning probation revocation hearings, which appeared most closely analogous to the situation before the Court. The defendant was represented by able counsel, appointed by the Court; the defendant was present when the government's evidence was presented and his counsel cross-examined the government's witnesses; the defendant's counsel presented evidence and argument on his own behalf. The evidence presented leaves the Court with no doubt but that the defendant, John W. Gray, made intentionally fraudulent misrepresentations to the United States Probation Department and this Court, and thereby obtained a modification of his sentence.

7. The government's motion should, therefore, be allowed.

So Ordered.

### ORDER

In accordance with Memorandum filed this date, it is ORDERED that:

1. The Court's amended judgment entered March 31, 1988 is hereby VACATED;

2. The original judgment entered February 23, 1988 is hereby REINSTATED: to wit, defendant John W. Gray, on each of Counts I, II, and III of the Indictment, is sentenced to a term of imprisonment of one year, said sentences to be served concurrently with each other, with credit for time served. The Court also imposes a special assessment totalling $150.

3. The defendant, John W. Gray, is ordered to surrender himself to the United States Marshal's Office at the federal courthouse in Boston, Massachusetts, by Monday, March 27, 1989, at 11:00 a.m., to recommence serving his sentence.