THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MICHAEL MAIETTA, Also Known as MICHAEL MALETTA, Appellant.

First Department, December 24, 1991

### APPEARANCES OF COUNSEL

*David H. Fromm* of counsel *(Polatsek & Fromm,* attorneys), for appellant.

*Daniel S. Ratner* of counsel *(Billie Manning* with him on the brief; *Robert T. Johnson, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

Ross, J.

The appeal before us presents the issue of whether Criminal Term can enhance a sentence, when a defendant breaches a specific condition of a plea negotiation, by his re-arrest.

Between September 1990 and January 1991, Bronx County Grand Juries filed four separate indictments against defendant, and others, charging them with the commission of the felony crimes of burglary in the second degree (Penal Law § 140.25 [four counts]), burglary in the third degree (Penal Law § 140.20 [three counts]), possession of burglar's tools (Penal Law § 140.35 [two counts]), criminal possession of stolen property in the third degree (Penal Law § 165.50), criminal possession of stolen property in the fourth degree (Penal Law § 165.45 [three counts]), criminal mischief in the second degree (Penal Law § 145.10), criminal mischief in the third degree (Penal Law § 145.05 [three counts]), grand larceny in the fourth degree (Penal Law § 155.30), attempted grand larceny in the third degree (Penal Law §§ 110.00, 155.35), and related misdemeanor crimes.

The People allege that those four indictments deal with the activities of a burglary ring, in which the defendant "was allegedly the so-called ring master. [This] group of burglars included childhood friends and family members * * * This was allegedly not a rinky-dink organization. These burglaries were planned in advance * * * The burglars were equipped with police scanners so as to monitor police frequencies before the burglaries were committed. The police would receive calls on the 911 phone misdirecting them to go to other locations".

Subsequent to arraignment, and after consultation with counsel, defendant knowingly and voluntarily pleaded guilty to a single felony count under each one of the four indictments, in full satisfaction of those indictments.

The details of defendant's four pleas, in substance are:

First, defendant pleaded guilty to the crime of criminal possession of stolen property in the third degree, a class D felony, under indictment number 6251/90, and admitted that, on or about June 26, 1990, at about 10:00 P.M., inside a private house, located at 2407 Esplanade Avenue, Bronx County, he

possessed motorcycle helmets, stereo and phone equipment, and jewelry, all of which he knew had been stolen, and which he had not been given permission or authority to possess.

Second, defendant pleaded guilty to the crime of attempted burglary in the third degree, a class E felony, under indictment number 6820/90, and admitted that, on or about August 24, 1990, at about 2:00 A.M., he entered a cigarette warehouse, located at St. Ann's Avenue, Bronx County, and stole property located in said warehouse.

Third, defendant pleaded guilty to the crime of attempted burglary in the third degree, a class E felony, under indictment number 9570/90, and admitted that, on or about November 15, 1990, at about 3:20 P.M., he entered a building, located at 727 Throgs Neck Expressway, Bronx County, and stole certain property in that building.

Fourth, defendant pleaded guilty to the crime of burglary in the third degree, a class D felony, under indictment number 10082/90, and admitted that, on or about November 12, 1990, at about 3:00 A.M., together with Mr. Alfio Occhino, he entered premises, located at 1611 East 233rd Street, Bronx County, and he stole cash, a deli scale and cigarettes.

In exchange for defendant's four felony pleas of guilty, Criminal Term agreed to impose a sentence of 4 to 8 years, and to permit defendant to remain on bail until sentence was imposed, upon the conditions that defendant not be arrested again, between the time of the plea and the date of sentence, he cooperate with the Probation Department, and he appear for sentence.

The following colloquy took place between Criminal Term and the defendant concerning the fact that if defendant was arrested again before the date of sentence, the sentence would be enhanced:

"THE COURT: You are a professional burglar, sir, so if you don't get out of your profession and you get arrested again, instead of * * * being four to eight, I will give you a total time in jail which will come to 22 years in jail, do you understand that?

"DEFENDANT * * * Yes.

"THE COURT: You will not be permitted to withdraw your * * * pleas of guilty, you will not be permitted to go to trial, you will just get an enhanced sentence of 22 years in State's prison, do you understand?

"DEFENDANT * * * Yes, sir.

"THE COURT: Do you want to ask me any questions?

"DEFENDANT * * * No, sir.

"THE COURT: Of course if you appear and don't get arrested I will give you four to eight.

"DEFENDANT * * * Yes."

After accepting the pleas, Criminal Term adjudicated defendant, without objection, a predicate felony offender, upon the basis of a judgment, Supreme Court, Queens County, entered December 3, 1985, which convicted him of the crime of grand larceny in the second degree, and for which he was sentenced to an indeterminate prison term of 2 to 4 years.

Before adjourning the plea proceeding, and continuing defendant on bail, until the date of sentence, Criminal Term once more warned defendant: "you get arrested again, not convicted but arrested again, you face significant time in jail". When the court asked him if that warning was clear, defendant unequivocally answered: "Yes".

Thereafter, on May 2, 1991, when the defendant appeared for sentencing, the People requested Criminal Term to impose the enhanced sentence, since defendant had breached the no-arrest condition of the plea negotiation, by being arrested as well as indicted for a burglary committed in Yonkers, on or about March 28, 1991, which date was approximately 17 days after he had entered his pleas of guilty to the four indictments. The People submitted to Criminal Term a copy of the Westchester County indictment, charging that defendant, acting in concert with another unnamed person, committed the crimes of burglary in the second degree (Penal Law § 140.25), criminal trespass in the second degree (Penal Law § 140.15), and criminal mischief in the fourth degree (Penal Law § 145.00).

It is undisputed that, in the Westchester County burglary case, *inter alia,* a person, who emerged from a Jeep owned by defendant, allegedly attempted to kick in the door of a residence, and thereafter that person fled, with no one being arrested at the scene. Further, it is also undisputed that the police traced the ownership of the Jeep back to defendant, and that a Yonkers police officer, who observed the fleeing Jeep, subsequently identified defendant, from a photograph, as its driver.

Defense counsel contended that, since defendant claimed that he was innocent of the crimes committed in Westchester County, the sentence should not be enhanced. In support of

that position, defense counsel offered a handwritten unsworn statement of Mr. Anthony Salveggi, who alleged that he drove the Jeep in the Westchester incident, and that his passenger was Mr. Occhino, who he accused of committing the crime in issue.

We note in passing that, as discussed *supra,* in defendant's plea of guilty to the crime of burglary in the third degree, in satisfaction of Bronx indictment number 10082/90, he admitted that he committed that crime with the said Mr. Occhino.

After hearing defense counsel's argument, Criminal Term rejected same, and held that, in accordance with the terms of the plea negotiation, it was going to enhance the sentence, based upon defendant's new arrest. In pertinent part, Criminal Term explained: "in this case not only was the defendant arrested but he was subsequently indicted so that there is an additional filter *[sic]* for the quality of the arrest, and * * * he was arrested and indicted for things that he does professionally, burglary * * * The condition of the promise was fully and completely and clearly discussed * * * [Defendant's] plea was intelligently and knowingly and freely and voluntarily entered at that time with the conditions".

Subsequently, upon the basis of defendant's previously entered pleas of guilty, Criminal Term sentenced him, as a second felony offender, to two indeterminate terms of imprisonment of from 3½ to 7 years for the crimes of criminal possession of stolen property in the third degree and burglary in the third degree, and to two indeterminate terms of imprisonment of from 1½ to 3 years for the crime of attempted burglary in the third degree (two counts). Since Criminal Term directed that the four sentences run consecutively, the minimum term is 10 years and the maximum is 20 years. Defendant appeals.

Defendant contends, in substance, that Criminal Term erred in imposing an enhanced sentence, since he denied any involvement in the Westchester crimes.

Pursuant to CPL § 220.10 (4) (b), a defendant, such as the instant defendant, who is faced with a number of indictments, containing a number of felony counts, "may, with both the permission of the court and the consent of the people, enter a plea of * * * [g]uilty of a lesser included offense". The "guilty plea telescopes the judicial process and the necessarily protracted intervals involved in charge, trial, and sentence, and even appeals, hopefully starting the offender on the road to

possible rehabilitation" *(People v Selikoff,* 35 NY2d 227, 233 [1974], *cert denied* 419 US 1122 [1975]). We have held that "[t]he general rule is that a plea of guilty is a waiver of all nonjurisdictional defects. *(People v Vina,* 47 AD2d 895.)" *(People v Giuliano,* 52 AD2d 240, 243 [1st Dept 1976].) Further, "[a] guilty plea generally represents a compromise or bargain struck after negotiation between defendant and the People. As such, it marks the end of a criminal case, not a gateway to further litigation" *(People v Taylor,* 65 NY2d 1, 5 [1985]).

The Court of Appeals, in *People v Cataldo* (39 NY2d 578, 580 [1976]), held "[c]ompliance with a plea bargain is to be tested against an objective reading of the bargain, and not against a defendant's subjective interpretation thereof. A contrary holding would permit any defendant to withdraw his plea of guilty solely because he was disappointed with the sentence received, even though the court has kept its word in that respect".

Our review of the record indicates that at no time during the plea negotiation did either the defendant or his counsel raise any objection, on either factual or legal grounds, to the condition that, if defendant was re-arrested, the sentence would be enhanced. In fact, the only question raised about the re-arrest condition was defense counsel's query to Criminal Term as to what would happen if defense counsel was able to obtain a dismissal of the arrest within three days, and Criminal Term unequivocally replied: "[t]he promise that I'm making to you, three days after his arrest, if the case is dismissed, I will consider that case an erroneous arrest".

Repeatedly, we have held that Criminal Term can enhance a sentence, when a defendant violates explicit conditions of a plea negotiation, such as that he or she appear at sentence, maintain good conduct until the date of sentence, not commit any further crimes, and not be re-arrested *(People v Salem,* 169 AD2d 594 [1st Dept 1991]; *People v Dremeguila,* 166 AD2d 196, 197 [1st Dept 1990]; *People v Harrison,* 161 AD2d 550, 551 [1st Dept 1990]; *People v Hernandez,* 155 AD2d 361 [1st Dept 1989]). Further, the Appellate Division has upheld an enhanced sentence, when a defendant breached the explicit plea condition of cooperation with the Department of Probation *(People v Moore,* 155 AD2d 696 [1989]).

Recently, we stated in *People v Harrison (supra,* at 551), "Defendant asserts that his due process rights were violated because the court gave improper consideration to extraneous

crimes in imposing his sentence. We find this claim to be without merit. A sentencing court may properly consider a defendant's subsequent arrests, especially where the court expressly conditioned its earlier sentencing promise on defendant's good conduct".

More than 40 years ago the United States Supreme Court stated: "[t]he due process clause should not be treated as a device for freezing the evidential procedure of sentencing in the mold of trial procedure. So to treat the due process clause would hinder if not preclude all courts—state and federal—from making progressive efforts to improve the administration of criminal justice" *(Williams v New York,* 337 US 241, 251 [1949], *reh denied* 337 US 961 [1949], 338 US 841 [1949]).

It should not be overlooked that, as a result of defendant's criminal record, he is quite familiar with the operation of the criminal justice system, and, on the basis of that experience, we find that defendant fully understood Criminal Term's warning that, if he was again arrested, the sentence would be enhanced. The Appellate Division, Second Judicial Department, has held that Criminal Term properly imposed a higher sentence than the one promised at a plea proceeding, when a defendant, "who had extensive prior experience in the criminal justice system," breached a plea condition of "not becoming involved in any further 'trouble' of a criminal nature", by his "arrest and indictment for criminal offenses committed after the plea proceedings and prior to the scheduled sentencing date" *(People v Caridi,* 148 AD2d 625, 625-626 [1989], *lv denied* 74 NY2d 662 [1989]).

The dissent concedes that the provision of an enhanced sentence, if a defendant breaches a plea condition not to be re-arrested before sentencing, "is a necessary and essential deterrent to criminal conduct by defendants, convicted upon their plea of guilty, who are released pending sentence" *(see,* dissent, at 26-27). We agree, since, if trial courts could not enhance a sentence, when a defendant breached a condition not to be re-arrested, such courts would be reluctant to ever permit defendants to remain free, during the period of time between plea and sentence.

Further, the dissent contends that there is an exception to this general rule of enforceability of the breach of the re-arrest condition in the instant case, since the defendant claims that he is innocent of the new crimes, and, in view of the fact that "the consequences of defendant's commission of a

postplea crime are so substantial under the terms of the plea arrangement itself, it is incumbent upon the sentencing court to conduct a hearing to resolve the disputed factual contentions" *(see,* dissent, at 27).

In support of his contention that Criminal Term must hold a hearing, the dissent primarily relies upon three cases: *People v Villanueva* (144 AD2d 285 [1st Dept 1988]), *People v Banks* (161 AD2d 957 [1990]), and *United States v Lee* (818 F2d 1052 [2d Cir 1987], *cert denied* 484 US 956 [1987]). After examining those cases, we find them all to be inapplicable, since none of them involves a defendant who breached a provision of a plea negotiation specifically providing that re-arrest would result in an enhanced sentence.

*People v Villanueva (supra)* involved a sentence imposed after a jury conviction, and therefore no plea promises were involved. While *People v Banks (supra,* at 957) involved a guilty plea, it concerned the effect on sentence enhancement of a breach of a general plea condition " 'not to get into any additional trouble between now and the time of sentence' ", and not a breach of a specific condition not to be re-arrested. Finally, while *United States v Lee (supra)* involves a guilty plea, it concerned sentence enhancement where no conditions were imposed and was based upon the use of a presentence report, and not sentence enhancement based upon the breach of a plea condition.

Should the dissent prevail, it would create a legal morass, since the hearing to be conducted by Criminal Term concerning what happened in Westchester would lead to a minitrial in Bronx County of a pending Westchester criminal indictment. The consequences of the result of such a minitrial, upon further legal proceedings in Westchester, would be chaotic. For example, if Bronx Criminal Term finds, after hearing the evidence presented to the Westchester Grand Jury and the defendant's defense, that the defendant was innocent of that crime, does the result of such a hearing preclude defendant's further prosecution in Westchester County on double jeopardy grounds? Should the People be required to prove defendant's guilt in both Bronx and Westchester Counties, of an indictment returned in Westchester County?

On the basis of the record herein, we find that Criminal Term properly enhanced the sentence, when the defendant violated a specifically negotiated plea condition not to be re-arrested, since this defendant, who was "schooled in the

nature of criminal proceedings [o]nly after consultation with his attorney and detailed explanations by the court did [he] tender his guilty plea. There is, therefore, no basis for assuming that defendant was not cognizant of the legal implications and personal repercussions of his action" *(People v Frederick,* 45 NY2d 520, 525 [1978]). Moreover, the "defendant here has not been shown to have been victimized by inherent unfairness, nor is it evident that the court should have perceived any" *(People v Francis,* 38 NY2d 150, 156 [1975]).

Accordingly, judgment, Supreme Court, Bronx County (Gerald Sheindlin, J.), rendered May 2, 1991, convicting him, upon his plea of guilty, of the crimes of criminal possession of stolen property in the third degree (Penal Law § 165.50), burglary in the third degree (Penal Law § 140.20), and attempted burglary in the third degree (Penal Law §§ 110.00, 140.20 [two counts]), and sentencing him, as a second felony offender, to two indeterminate terms of imprisonment of from 3½ to 7 years for the crimes of criminal possession and burglary, and to two indeterminate terms of imprisonment of from 1½ to 3 years for the crime of attempted burglary (two counts), all sentences to run consecutively, is affirmed.

MILONAS, J. (dissenting in part). In accepting defendant's plea of guilty to charges of criminal possession of stolen property, burglary and attempted burglary, on March 11, 1991, the Supreme Court repeatedly advised defendant that he would be sentenced to an aggregate term of 4 to 8 years' imprisonment if he were not arrested for any further crimes, appeared for sentencing and cooperated with probation, and that in the event he violated any of these conditions, the maximum sentence allowed by law, said to amount to an effective aggregate term of 11 to 22 years' imprisonment, would be imposed, without any opportunity for defendant to withdraw the plea in the face of the enhanced sentence. In a colloquy, the court made clear an erroneous arrest or a charge dismissed within three days would not constitute a breach of these conditions such as to lead to the imposition of the enhanced sentence.

It developed that defendant was arrested for, and indicted in connection with, a Westchester County burglary committed on March 28, 1991. At the May 2, 1991 sentencing proceeding, defendant's counsel requested, *inter alia,* a hearing as to whether defendant had committed and/or participated in the Westchester burglary. Counsel conceded, for purposes of the

proceeding, that the passenger of a Jeep owned by defendant had broken in the door of a Yonkers residence on March 28, 1991 and had fled in the Jeep, driven by another, after being observed in the midst of this crime; and that defendant had been identified as the driver of the Jeep by a Yonkers police officer. It was maintained, however, that such identification was mistaken and based solely upon a 20-second viewing of the driver of the moving vehicle. Defense counsel offered the written statement of one Anthony Salveggi, asserting that he had borrowed defendant's vehicle that day, was the driver at the time of the incident, and that the door of the Yonkers residence had been broken in by his passenger, codefendant herein, Alfredo Occhino. Further, counsel represented there were three alibi witnesses prepared to testify that defendant was working in a carpet store in the Bronx at the time of the incident. The court denied defendant's applications, finding the conditions of the plea bargain leading to imposition of the enhanced sentence had been fully and carefully discussed at the plea proceeding. The court proceeded to state:

"I look at it, at an arrest and sometimes I use it and sometimes I don't, it depends on my review of the quality of the arrest and some of the circumstances surrounding it before I actually use it as an enhancing factor despite the strong language that I use at the time that I accept the plea and condition it on another arrest.

"However, in this case not only was the defendant arrested but he was subsequently indicted so that there is an additional filter for the quality of the arrest, and not only was he arrested and not only was he indicted, but he was arrested and indicted for things that he does professionally, burglary."

The court then imposed maximum consecutive terms, which in fact amounted to an effective aggregate term of 10 to 20 years' imprisonment.

The courts of this State, including this court, have repeatedly upheld the practice of imposing an enhanced sentence for breach of a plea condition that defendant "stay out of trouble" and/or not be re-arrested prior to sentencing (*People v Murello,* 47 AD2d 528, *affd* 39 NY2d 879; *People v Innes,* 111 AD2d 356; *People v Caridi,* 148 AD2d 625; *People v Hernandez,* 155 AD2d 361; *People v Harrison,* 161 AD2d 550). The provision for an enhanced sentence upon breach of such condition is a necessary and essential deterrent to criminal conduct by defendants, convicted upon their plea of guilty, who are

released pending sentence. Moreover, in this case, the court's statements at both the plea and sentencing proceedings make it abundantly evident that the terms of the plea bargain did not call for an enhanced sentence merely upon an accusation against defendant. The court made it clear that "an erroneous arrest" would not constitute a breach of the condition of the plea arrangement, and that only a "quality" arrest would lead to imposition of the enhanced sentence. The court effectively communicated that the condition of the plea arrangement was that defendant not commit a postplea crime and that if defendant did so, an enhanced sentence would be imposed without the opportunity to withdraw the plea (see, United States v Giorgi, 840 F2d 1022, 1026). Thus, the deficiency found in the plea allocution in the Innes case, by the Second Circuit in Federal habeas corpus litigation, of insufficient warning that there would be no opportunity to withdraw the plea in the face of an enhanced sentence (Innes v Dalsheim, 864 F2d 974) is not presented here. Insofar as the enhanced sentence was imposed in the absence of a conviction (or any finding of guilt beyond a reasonable doubt) of a postplea crime, the practice is completely consistent with that of allowing consideration in sentencing of events underlying counts of an indictment which have been dismissed and even of events underlying crimes of which defendant has been acquitted (United States v Sweig, 454 F2d 181; Billiteri v United States Bd. of Parole, 541 F2d 938, 944).

While the plea arrangement was therefore enforceable, this matter differs from the above, earlier New York State cases, in that defendant herein denied committing the alleged postplea crime or even participating in the acts which led to the arrest and charge. It is well established that a defendant is entitled to an opportunity to refute routine, aggravating factors in a probation report which may negatively influence the court in sentencing (People v Perry, 36 NY2d 114, 119). In these circumstances, where the consequences of defendant's commission of a postplea crime are so substantial under the terms of the plea arrangement itself, it is incumbent upon the sentencing court to conduct a hearing to resolve the disputed factual contentions. Indeed, this court has itself so held. "As a matter of due process, a court may not use extraneous crimes to enhance a sentence unless it first has ascertained, by way of accurate, reliable evidence, that defendant actually committed those crimes" (People v Villanueva, 144 AD2d 285). The Third Department has also held a hearing is required in these

circumstances. In *People v Banks* (161 AD2d 957), the promised sentence was contingent upon defendant not getting " 'into any additional trouble between now and the time of sentence' "; the sentencing court imposed a higher term without conducting a hearing upon defendant's denial of criminal involvement in the theft or possession of a stolen car in which he had been arrested. The Appellate Division found that the sentencing court "deprived defendant of his right to a meaningful opportunity to refute the single, aggravating factor which influenced the court in increasing defendant's punishment". *(Supra,* at 958.) Significantly, the Federal District Court, in the course of denying James Innes' writ of habeas corpus, stated that "[a]t sentencing a defendant is, of course, entitled to require the prosecution to make some kind of showing that he did engage in acts that led to an arrest and charge" *(Innes v Dalsheim,* 680 F Supp 517, 520, *revd on other grounds* 864 F2d 974, *supra).*

There is no merit to the sentencing court's implication that the Grand Jury's indictment of defendant in connection with the Westchester burglary was sufficient protection against the possibility of imposition of an enhanced sentence based upon an erroneous arrest. The standard applicable to Grand Jury proceedings is merely that the evidence (viewed most favorably to the prosecution) be *legally sufficient* to establish the accused committed the offense charged and also provide reasonable cause to believe the accused committed the offense (CPL 190.65; *People v Mikuszewski,* 73 NY2d 407, 411). The proceeding is not an adversarial one and defendant is neither entitled to cross-examine witnesses nor to be represented by an attorney during the testimony of other witnesses. This is not to say that the prosecution must establish defendant's commission of a postplea crime beyond a reasonable doubt in order to enforce the plea arrangement to the extent of having the enhanced sentence imposed. The "preponderance of the evidence" standard should be applicable to such a hearing, as is with respect to other disputed factual matters in sentencing which are legitimately the subject of an adversarial hearing *(United States v Lee,* 818 F2d 1052, *cert denied* 484 US 956). The prosecution, however, should not obtain enforcement of the more onerous, enhanced sentence, in the face of defendant's substantiated denial, without a showing that defendant committed a postplea crime.

Accordingly, the judgment of the Supreme Court, Bronx County (Gerald Sheindlin, J.), rendered May 2, 1991, which

convicted defendant, upon his guilty plea, of criminal possession of stolen property in the third degree, burglary in the third degree, and attempted burglary in the third degree (two counts), and sentenced him to consecutive terms of 3½ to 7, 3½ to 7, 1½ to 3 and 1½ to 3 years' imprisonment, respectively, should be modified, on the law, to vacate the sentence, and the matter should be remanded for resentencing proceedings not inconsistent with this decision, and the judgment should be otherwise affirmed.

SULLIVAN, J. P., and ASCH, J., concur with ROSS, J.; MILONAS and SMITH, JJ., dissent in part in an opinion by MILONAS, J.

Judgment, Supreme Court, Bronx County, rendered May 2, 1991, affirmed.