*917 OPINION OF THE COURT
Peter M. Leavitt, J.
On October 14, 1995, following a jury trial, defendant was found guilty of manslaughter in the first degree. On February 5, 1996, this court granted defendant’s application to be adjudicated a youthful offender, vacated his conviction and sentenced defendant, as a youthful offender, to a term of probation for a period of five years. During the sentence proceeding the People had advised the court that, in the interim since the verdict had been rendered, defendant had been arrested and indicted for the alleged robbery of the employees of a restaurant in Brooklyn, New York. Citing the Court of Appeals decision in People v Outley (80 NY2d 702 [1993]), the People argued that the fact that defendant had been indicted should be considered by this court as an aggravating factor in its youthful offender and sentencing determinations.
Although he was neither requested by the court, nor otherwise bound to do so, defendant’s attorney responded to the People’s comments. He indicated that he was representing defendant in, and was fully familiar with the facts and circumstances of, the Brooklyn matter. He represented that defendant had not been identified in a lineup, that defendant had an alibi and that another person had taken defendant’s coat and perpetrated the robbery with others. Defendant personally said nothing about the Brooklyn matter or his attorney’s representations concerning it. Since at that point defendant was still entitled to the presumption of innocence with respect to the Brooklyn matter, the court declined the People’s entreaty to consider the fact of indictment for that extraneous transaction as an aggravating factor. (See, People v Villanueva, 144 AD2d 285 [1st Dept 1988].)
By letter dated October 11, 1996, Ms. Janice E. Taylor, General Counsel to the City of New York. Department of Probation, advised the court that defendant had entered a plea of guilty to a felony in the matter for which he had been indicted in Brooklyn. The court considered that this development might constitute grounds to vacate the youthful offender and sentencing adjudications, and to resentence, because said judgments had been obtained by defendant’s fraud upon the court. Accordingly, when the People’s time to seek such relief pursuant to CPL 440.40 (1) expired without any motion therefor having been interposed, the court directed the parties to appear before it on March 3, 1997. At that time the parties were advised that *918 the court was contemplating vacatur and resentence as aforesaid, sua sponte, and invited them to submit memoranda of law on the issue. Defendant was also invited to submit his own affidavit concerning the substance of his plea of guilty in the Brooklyn matter as well as a certified transcript of said allocution. Memoranda of law were submitted and have been considered. Defendant chose not to make, any other submissions.
Initially, it must be noted that the People’s citation of the Outley decision (supra) at the sentence proceeding was inapposite and based upon a misreading thereof which they apparently still labor under. In Outley the Court of Appeals determined the consolidated appeals of three defendants who had been convicted upon negotiated pleas of guilty. In each instance the court which accepted the plea had expressly conditioned its sentence promise upon the defendant not being arrested for any other crime before the date on which sentence was to be imposed; and, in each instance, the defendant had been arrested during such period and, consequently, received an enhanced sentence. (People v Outley, 80 NY2d, at 707-712.)
As the Court noted: "The question before us concerns the minimum requirements of due process when, as in these appeals, the defendant has breached a no-arrest condition by being arrested before the sentence but denies any complicity in the underlying crime” (People v Outley, supra, at 712).
In answer to this question, the Court concluded: "The inquiry must be of sufficient depth * * * so that the court can be satisfied — not of defendant’s guilt of the new criminal charge but of the existence of a legitimate basis for the arrest on that charge” (People v Outley, supra, at 713 [emphasis added]).
The Court found that the fact that an indictment had been returned charging one of the defendants (i.e., Maietta) with the criminal conduct for which he’d been arrested, in combination with other circumstances,[1] was sufficient to satisfy the minimum requirements of due process for the sentencing court’s *919 determination that the defendant had violated the no-arrest condition of his plea agreement. (People v Outley, supra, at 714.) Thus, the Outley decision authorizes a sentencing court to impose a more severe sentence, then that which it had promised a defendant who had entered a plea of guilty in reliance thereon, where such defendant has violated a no-arrest condition and the court determines that there was a legitimate basis for the arrest. Certainly, a sentencing court may always consider a defendant’s intervening commission of another crime in reaching an appropriate sentence. (People v Khan, 146 AD2d 806, 807 [2d Dept 1989].) Also — assuming that the fact of arrest for the alleged commission of another crime would be sufficient — it can be reasonably argued that the portion of the Outley decision which addresses the minimum due process requirements for a finding of a "legitimate basis” for such an arrest may be applied in the determination of an appropriate sentence upon a verdict after trial.[2] However, this court was, and remains, unaware of any existing judicial or statutory authority — and the People have cited none— sanctioning a sentencing court’s use of the mere fact of an arrest for — as opposed to, "accurate, reliable evidence that defendant actually committed” (People v Villanueva, 144 AD2d 285, supra) — an intervening extraneous crime as a basis for denial of youthful offender status or to enhance sentence.
Yet, despite their ardent beseechment that defendant’s application for youthful offender adjudication should have been denied, and his sentence more severe, as a consequence of his involvement in the Brooklyn matter — a position which subsequent events have vindicated — the People appear curiously equivocal about the action which the court is about to undertake: an action which would remedy the very inequity which they had so vociferously railed against. Defendant, of course, opposes such action on several grounds.
It is well settled that courts possess the inherent power to vacate and correct their own judgments which have been obtained by fraud or misrepresentation. (E.g., Chambers v *920 NASCO, Inc., 501 US 32, 44 [1991]; Levitin v Homburger, 932 F Supp 508, 518-519 [SD NY 1996].) This inherent power is deeply rooted in the common law (Hazel-Atlas Co. v Hartford Co., 322 US 238, 244-245 [1944]), applies to judgments rendered in criminal, as well as civil, matters (e.g., Matter of Hogan v Supreme Ct., 295 NY 92 [1946]; Matter of Lyons v Goldstein, 290 NY 19, 25 [1943]), and is not circumscribed by any statutory time period (see, People v Wright, 56 NY2d 613, 615 [1982]). Nor is said authority limited to the rectification of mere clerical errors [see, contra, Matter of Campbell v Pesce, 60 NY2d 165, 169 [1983]), or an illegal sentence inadvertently imposed (e.g., People v Ford, 143 AD2d 522 [4th Dept 1988]; Matter of Lockett v Juviler, 65 NY2d 182 [1985]; see also, People v Smalls, 162 AD2d 642, 643 [2d Dept 1990]). Rather, where a defendant in a criminal matter misrepresents a fact or set of circumstances upon which he knows the court will rely in its determination, and the court does accept and rely thereon so that its judgment rendered in such reliance would have been otherwise but for said misrepresentation, the judgment so obtained is subject to vacatur. (See, e.g., People v Calderon, 79 NY2d 61, 65-67 [1992] [youthful offender adjudication when obtained by defendant’s fraud or misrepresentation]; Matter of Lockett v Juviler, supra [plea of not responsible by reason of mental disease or defect]; People v Ryan, 168 Misc 2d 961 [Sup Ct, Kings County 1996] [illegal sentence]; United States v Gray, 708 F Supp 458 [D Mass 1989] [sentence modification].)
Further, misrepresentations which may result in vacatur are not limited to a defendant’s affirmative declarations addressed directly to the bench in open court. A defendant’s false out-of-court statement to a third party has subsequently invalidated a judgment rendered in reliance thereon, where the defendant knew and intended that the court would rely upon the misrepresentation when it was made. (Matter of Lockett v Juviler, supra [court accepted defendant’s plea of not responsible by reason of mental disease or defect in light of psychiatric experts’ opinion that defendant suffered from posttraumatic stress syndrome, which opinion was based upon defendant’s false representations that he had served in combat during the Vietnam War].) Likewise, a misrepresentation contained in papers filed by an attorney has been held to void a judgment rendered in reliance thereon, where the defendant in whose behalf they were submitted knew of the falsity and failed to correct the misrepresentation or advise the court or his attorney thereof. (United States v Bishop, 774 F2d 771 [7th Cir *921 1985] [on motion to modify sentence, defendant failed to advise that State court’s sentence for which defendant was seeking concurrent credit had previously been substantially reduced].) Moreover, a defendant’s purposeful failure to reveal information which he knows would engender a different judgment can be as much a fraud upon the court as is an affirmatively stated falsehood intended to conceal such dispositive information. (See, People v Barnes, 160 AD2d 342 [1st Dept 1990] [defendant failed to disclose alias or prior conviction so as to avoid enhanced sentence as second felony offender]; United States v Kendis, 883 F2d 209, 210 [3d Cir 1989]; cf., Goene v State, 577 So 2d 1306 [Fla Sup Ct 1991] [defendant affirmatively misrepresented his identity, thereby concealing information which should have enhanced his sentence].)
Without doubt a defendant’s commission of another crime while awaiting sentence for a crime of which he was previously convicted may be considered in a court’s determination of an appropriate sentence on the underlying conviction (People v Kahn, 146 AD2d 806, supra), or a defendant’s application to be adjudicated a youthful offender (CPL 720.20 [1] [a]; see also, People v Cruickshank, 105 AD2d 325, 333-336 [3d Dept 1985]; cf., People v Utz, 40 AD2d 1045 [3d Dept 1972] [not abuse of discretion to revoke "eligibility” for youthful offender adjudication for defendant’s failure to appear]), and this court would not have hesitated to do so in Mr. Minott’s case. However, while the exercise of sound discretion would not necessarily have precluded consideration of the Brooklyn matter in aggravation of defendant’s sentence, despite that he had not yet been convicted therefor (see, People v Seplow, 226 AD2d 178, 179 [1st Dept 1996]; but see, People v Villanueva, 144 AD2d 285, supra), this court is generally loathe to employ such factors in its sentencing and youthful offender decisions. As noted at the sentence proceeding, this court felt certain that, if Mr. Minott was ultimately convicted of the crimes alleged in the Brooklyn indictment, he would be appropriately sentenced therefor.
Where a defendant’s intervening commission of another crime is established, however, this court has no such reservations. As a practical matter, of course, unless a defendant admits his involvement in the intervening crime, or has already pleaded guilty or been convicted after trial, his commission thereof is not established, but merely alleged, at the time that his youthful offender application is determined or sentence on the underlying conviction is imposed. But none of these *922 contingencies had yet occurred as of the date on which such judgments were rendered herein. Although not obliged to do so, however — and, indeed, absolutely privileged not to do so— Mr. Minott chose to make representations to the court concerning his alleged commission of the crimes charged in the Brooklyn indictment. That said representations were made by defendant’s attorney, rather than him personally, is of no moment, since he was present when they were placed on the record and evidently made no effort even to advise his attorney in confidence to alter or correct them. (See, United States v Bishop, supra; People v Griffith, 153 Cal App 3d 796, 200 Cal Rptr 647 [1984]; cf., Matter of Lockett v Juviler, 65 NY2d 182, supra.)
Furthermore, defendant’s current contentions to the contrary notwithstanding, the statements made in his behalf at the sentence proceeding were not equivocal. Taken together, counsel’s remarks clearly implied that defendant had not been involved in the criminal transaction on which the Brooklyn indictment was founded, and that he had been wrongly accused because one of the actual perpetrators had been wearing his coat. (See, supra, at 917-918.) A representation subsequently proven false need not necessarily have been an express denial of guilt or declaration of innocence in order to constitute a fraud on the court for which a judgment rendered in reliance thereon is subject to vacatur. (Matter of Lockett v Juviler, supra; see also, e.g., United States ex rel. Sole v Rundle, 435 F2d 721 [3d Cir 1971] [defendant misrepresented circumstances of intervening crime]; State v Carvajal, 147 Ariz 307, 709 P2d 1366 [Ct App 1985] [defendant misrepresented availability of asset from which restitution could be made as condition of sentence of probation]; People v Griffith, supra [defendant represented that he was "a changed person” and wanted "to go straight” when, in fact, he had committed intervening crime of which sentencing court was unaware].) It is enough that a defendant was aware that the court would rely upon such representation — and that the court did, in fact, do so — in rendering judgment. (See, Matter of Lockett v Juviler, supra; People v Ryan, 168 Misc 2d 961, supra; United States v Bishop, 774 F2d 771, supra; United States v Gray, 708 F Supp 458, supra; State v Carvajal, supra; People v Griffith, supra.) This court’s comments at Mr. Minott’s sentence proceeding leave no doubt as to either its acceptance and reliance upon the implications of his innocence of the Brooklyn charges or defendant’s contemporaneous awareness of such reliance: e.g., "the fact that he was *923 presently awaiting this sentence will be considered by this Court if he is found guilty in that other matter, and he will be returned to this Court to be re-sentenced” (minutes of sentence, People v Minott, Feb. 5, 1996, indictment No. 1778/94 [hereinafter minutes], at 51, lines 13-17).[3]
Yet, defendant’s subsequent entry of a plea of guilty to attempted criminal possession of a weapon in the third degree in satisfaction of the Brooklyn indictment established that he had, in fact, been involved in the criminal transaction charged therein; and, consequently, that the representations on which this court had relied were false. There is no indication that this was a so-called Alford plea.[4] Nor does defendant allege that it was the product of duress or coercion, that it was entered unknowingly or unintelligently, or that it was otherwise involuntary or invalid. Defendant’s allegation that, "Mr. Minott was not at the scene of the Robbery [sic] and that the. possession that he admitted to took place at a different place, time and location” (defendant’s mem of law, at 14, ]| 21) is unavailing. The court assumes that the indictment was properly and lawfully disposed of. Therefore, the offense which defendant admitted guilt of was necessarily charged in the indictment, or was a lesser included offense with respect thereto. (See, CPL 220.10 [3], [4] [a], [b].) Thus, whatever the nature of his involvement, he had unquestionably participated in the criminal transaction upon which the Brooklyn indictment had been founded (see, CPL 1.20 [37]; 220.20 [1]) and, obviously, he knew that he had done so when his attorney represented to this court that he had not.
To reiterate: the judgments at issue herein are not subject to vacatur for the mere fact that defendant has been convicted for the commission of a crime which occurred prior to the pronouncement of said judgments, nor for his failure to admit that he had done so at the time said judgments were rendered. At that point defendant enjoyed an absolute privilege not to say anything about the intervening crime, and the imposition of an adverse ruling based upon his silence would clearly constitute a violation of his constitutional right to exercise said privilege. However, having chosen to forego the privilege by responding to the People’s allegations, defendant cannot avoid *924 the consequences now that subsequent events have established that said response was fraudulent. (See, e.g., State v Carvajal, supra, 147 Ariz, at 310, 709 P2d, at 1370; compare, United States v Twitty, 44 F3d 410 [6th Cir 1995] [neither defendant nor her attorney made any response before sentencing court about crimes which she had allegedly committed in interim since conviction].)
Nor would vacatur of the youthful offender adjudication and sentence thereon, and resentencing of defendant as an adult, constitute a violation of his rights not to be twice put in jeopardy for the same offense (US Const 5th Amend; NY Const, art I, § 6). A defendant has no expectation of finality in a judgment obtained through his own fraud on the court (see, e.g., Commonwealth v Postell, — Pa Super —, 693 A2d 612 [1997]; State v Hardesty, 129 Wash 2d 303, 915 P2d 1080 [1996]; Goene v State, 577 So 2d 1306, supra; United States v Bishop, 774 F2d 771, supra; United States v Jones, 722 F2d 632 [11th Cir 1983] [all citing and applying United States v DiFrancesco, 449 US 117 [1980]), particularly where, as here, he was specifically advised by the court that the occurrence of a subsequent event — by which such fraud would be discovered — would occasion his return to the court for resentencing.
Accordingly, and for all of the foregoing reasons, upon its finding that defendant obtained through fraud judgments adjudicating him a youthful offender and sentencing him as such, the court hereby vacates said judgments.

. Beyond the mere inappropriateness of the People’s citation of Outley (supra) in the context of a determination of sentence upon a verdict after trial, the following language from their memorandum of law clearly misstates the holding itself: "according to Outley, the undisputed fact of defendant’s Kings County indictment is, in and of itself, sufficient evidence upon which' to enhancing [sic] a defendant’s sentence (Id., at 714)” (People’s mem of law, at 11, n 5 [emphasis added]). Nowhere on page 714, or anywhere else in the Outley decision, did the Court of Appeals state or imply that the fact of an indictment, per se, is sufficient to satisfy the minimum requirements of due process. Indeed, quite to the contrary, the Court explicitly *919 referred to three factual circumstances which appeared in the record of the sentence proceeding, but were outside the indictment (see also, People v Maietta, 173 AD2d 17, 20-21, 25-26 [1st Dept 1991]), and said: "Given this evidence * * * it can hardly be said that there was not enough in the record on which to predicate a breach of the [no-arrest] condition” (People v Outley, 80 NY2d, at 714 [emphasis added].)

. Indeed, at Mr. Minott’s sentence proceeding, the People had alleged other factual bases — beyond the mere fact that defendant had been indicted— which would probably satisfy the Outley standard.

. The court later reiterated this position but, unfortunately, inadvertently referred to a "violation of * * * probation” (minutes, at 54, lines 7-8) rather than resentence.

. See, North Carolina v Alford, 400 US 25 (1970); People v Francabandera, 33 NY2d 429, 434-435 (1974).