OPINION OF THE COURT
Joel M. Goldberg, J.
THE ISSUE
The issue to be decided is whether a court more than one *962 year after sentencing a defendant has the inherent power to vacate an illegal sentence where the defendant was illegally sentenced as a first-time felony offender as a direct result of his fraud and misrepresentation of his name and criminal record.
THE FACTS
On October 31, 1994, the defendant pleaded guilty before me to class C felonies on two indictments. Under indictment No. 13483/93 the defendant pleaded guilty to burglary in the second degree, and under indictment No. 5550/94 the defendant pleaded guilty to attempted robbery in the first degree. At the time, the defendant’s fingerprint record in each file indicated that the defendant had no prior convictions. The prosecution recommended sentences of l1/2 to 41/2 years on each plea to run concurrent to each other. Based on the facts then known to the court, this sentence was believed to be legal and appropriate. At the plea allocution, the court clerk advised the defendant that if he had previously been convicted of a predicate felony, as defined in Penal Law § 70.06, he would be subject to different or additional punishment.
On November 14, 1994, since the prosecution had not filed a predicate felony statement pursuant to CPL article 400 and the Probation Department’s presentence report did not indicate that the defendant had any prior criminal record, the defendant was sentenced as promised.
Subsequently, on November 17, 1995, one year and three days after the sentences were imposed, this court received a letter from an Inmate Records Coordinator at the Great Meadows Correctional Facility which indicated that the defendant was not a first offender at the time he was sentenced in 1994. In fact, according to the letter, the defendant was a persistent violent felony offender under the name Keith Kittredge. The defendant had the following prior felony convictions: (1) On December 14, 1979, the defendant was sentenced on two indictments. On indictment No. 1271/79, the defendant was sentenced on a conviction for robbery in the first degree to l1/2 to 4x/2 years, and on indictment No. 3056/79, the defendant was sentenced to one-year imprisonment on a conviction for attempted robbery in the third degree; (2) On June 29, 1983, the defendant was sentenced on three separate indictments. Under indictment No. 424/83, the defendant was sentenced to 3 to 6 *963 years for convictions on two counts of burglary in the third degree; on indictment No. 843/83, the defendant was sentenced to 3 to 6 years on two counts of attempted burglary in the second degree; and on indictment No. 874/83, the defendant was sentenced to 3 to 6 years on two counts of attempted burglary in the second degree. All sentences were to run concurrent to each other; (3) On December 15, 1987, on indictment No. 1877/87, the defendant was sentenced on a conviction for attempted burglary in the second degree to 6 years to life.
All of the above convictions were under the name Keith Kittredge.
Thus, the defendant should have been sentenced by this court as a persistent violent felony offender pursuant to CPL 400.16. At the time of these crimes, the mandatory minimum sentence for a persistent violent felony offender convicted of a class C felony was 8 years to life. Therefore, the sentences imposed were illegal.
After receiving the above letter, the court ordered that the defendant be produced from the State Department of Correctional Services. On January 17, 1996, the defendant was produced and was represented by the same counsel who represented him at sentencing. After conferring with the defendant, counsel stipulated that the defendant did indeed have the extensive criminal record noted above under the name Keith Kittredge.
DISCUSSION
It is not disputed that the People are now time barred from moving to set aside the sentences on the ground that they were invalid as a matter of law. CPL 440.40 (1) requires that such a motion be made not more than one year after sentence is imposed. However, it is well settled that courts have inherent power, i.e., in the absence of explicit statutory authority, to correct sentences in instances where the correction relates to mistakes or errors which may be termed clerical in nature. (See, People v Minaya, 54 NY2d 360 [1981], cert denied 455 US 1024 [1982] [court which mistakenly sentenced a defendant to three years instead of the eight years as promised at the time of plea could correct its error a few months later without violating either the statutory prohibition of CPL 430.10 against changing a sentence after its commencement or a defendant’s constitutional protections against double jeopardy].) Even after the one-year deadline of CPL 440.40 (1), the sentencing court *964 has the inherent power to correct an illegal sentence imposed as a result of a clerical or judicial error that deviates from what clearly was intended by the parties. (See, People v Wright, 56 NY2d 613 [1982] [court which sentenced defendant concurrently rather than consecutively as promised at the time of the plea and as required by Penal Law § 70.25 (2-a) could change the sentence, because CPL 440.40 (1) is intended only as a time limit on the People making a motion to vacate an invalid sentence, not as a limitation on the power of a court to correct its own errors].)
But, as noted in the McKinney’s Practice Commentaries to CPL 440.40, the question is open as to whether this inherent power to correct illegal sentences extends beyond mere clerical or judicial errors of the type made in Minaya and Wright (supra). The Fourth Department has held that it does (People v Ford, 143 AD2d 522 [4th Dept 1988], Iv denied 73 NY2d 786), but the First Department — rejecting the reasoning of the Fourth Department — has held that it does not (People v Rig-gins, 164 AD2d 797 [1st Dept 1990]).
In Ford (supra), the defendant was convicted of a felony committed while on parole. Although Penal Law § 70.25 (2-a) required that the Court impose a sentence to run consecutively with respect to the undischarged sentence, the Court sentenced the defendant to concurrent time. When the error was discovered, the Court set aside the original sentence and resentenced the defendant to consecutive time. On appeal, the Fourth Department held that the sentencing court had inherent power to correct this error and impose a consecutive sentence with the defendant being given an opportunity to withdraw his guilty plea. The opinion in Ford did not indicate that the illegal sentence was vacated after one year. However, this court has obtained the records and minutes of the proceedings in the Ford case from the Niagara County Clerk’s Office. Those records show that the illegal sentence was, in fact, vacated after one year on the Court’s own motion pursuant to what it found to be its inherent power to do so relying on People v Wright (supra).
The First Department in Riggins (supra), however, held that a sentencing court lacked the inherent power to correct an illegally imposed concurrent sentence nearly two years after the original sentence was imposed. According to Riggins, a court only has inherent power to correct an illegal sentence which was imposed in clear contravention of what was intended due to a patent clerical or judicial error as in Minaya and Wright (supra).
*965 Because the facts in this case are distinguishable from both Ford and Riggins (supra), it is not essential to decide which opinion is correct. In this case, unlike the cases of Ford and Riggins, the illegal sentence that was imposed was the result of a fraud and misrepresentation of fact by the defendant.
When arrested for burglary and related charges on November 10, 1993, the defendant here told the police his name was Robert Ryan — a name he never previously gave the police. Apparently, due to a failure to accurately check the defendant’s fingerprint record, the New York State Division of Criminal Justice Services produced a fingerprint record showing this was the defendant’s first arrest. The defendant was released on his own recognizance at his Criminal Court arraignment on November 11, 1993. The defendant did not appear on the adjourned date, November 21, 1993, in Part AP-1 and a bench warrant was ordered.
On May 4, 1994, the defendant was arrested for a robbery and related charges committed on March 11, 1994 while the defendant was still a fugitive on the earlier case. The defendant again gave his name as Robert Ryan and again his fingerprint record did not disclose his numerous prior convictions. The defendant was subsequently indicted on both cases under the name Robert Ryan.
While the indictments were pending, the defendant never disclosed his true identity. He even filed, through counsel, motions to dismiss the indictments in the interest of justice pursuant to CPL 210.40 based on assertions that he had tested positive for HIV and that he had never been arrested prior to these cases. In support of these motions, the defendant submitted a report from a forensic social worker employed by the Legal Aid Society which asserted that the information in that report was obtained from the defendant, his family (names not specified), and medical records. This so-called investigative report failed to disclose that the defendant had spent most of his adult life in prison under another name.
Clearly, the defendant, perhaps with the aid of the family members spoken to by the social worker, misrepresented his true identity and criminal record in the hope of avoiding the mandatory life sentence that a conviction on either indictment would bring. Although the motion to dismiss was denied based on the facts then known to the court, this report played a part in the court’s decision not to sentence the defendant to consecutive prison terms as might otherwise have been required by Penal Law § 70.25 (2-b).
*966 The active fraud, and misrepresentation by the defendant continued in his presentence interview with the Probation Department during which he stated he had "no family”. This statement appears twice in the presentence report. Had the Probation Department contacted the family members spoken to by the social worker or other family members, the Probation Department may have learned the defendant’s true identity and criminal history. However, the Probation Department did not discover the truth; thus the presentence report states: "the defendant has no other known convictions”.
Based on the foregoing, it is apparent that the defendant was not sentenced as a persistent violent felony offender as required by CPL 400.16 because of his active fraud and misrepresentation of his name and past criminal record. If the truth was discovered within one year of the illegal sentences, the sentences could have been vacated on motion of the People pursuant to CPL 440.40 (1).
This court rejects the defendant’s argument that after one year, it is now powerless to vacate these sentences. Even if the First Department’s Riggins decision (supra) is correct and courts do not have an inherent power to vacate an illegal sentence, courts have traditionally been regarded as having the inherent power to vacate judgments obtained by trickery, deceit, coercion or fraud and misrepresentation. (Matter of Lockett v Juviler, 65 NY2d 182 [1985].)
In Lockett (supra), the sentencing court accepted a special plea of "not responsible by reason of mental disease or defect” pursuant to CPL 220.15, because the defendant was found to have been suffering from posttraumatic stress disorder resulting from his Vietnam War experience. Prior to the dispositional hearing, the People learned that, although an Air Force veteran, the defendant had never been in Vietnam. The People’s motion to vacate the special plea on the ground that it was induced by fraud was granted. The Court of Appeals held that the sentencing court’s inherent power to vacate orders and judgments obtained by fraud and misrepresentation also could be applied to the plea in this case. (Matter of Lockett v Juviler, supra, at 187; see also, Matter of Lyons v Goldstein, 290 NY 19 [1943].)
Likewise, in People v Smith (NYLJ, Jan. 25, 1996, at 27, col 6), the Appellate Division, First Department, would not allow a defendant to benefit from a misrepresentation of his true name. In that case, the defendant entered a guilty plea and was promised a sentence as a first offender. However, the defen *967 dont actually had a prior felony conviction under another name. The defendant did not appear for sentencing nor for his scheduled appointment with the Court Employment Project and was involuntarily returned to court almost two years later. Because the defendant had a prior felony conviction, the court could not sentence the defendant to the promised sentence. The sentencing court, nevertheless, would not allow the defendant to withdraw his guilty plea, and it sentenced the defendant as a second felony offender. The First Department affirmed this sentence, because it found the sentencing court had the power not to allow the defendant to benefit from his own fraud.
The defendant’s reliance on Matter of Campbell v Pesce (60 NY2d 165 [1983]) is misplaced, because in that case the defendant did not receive his illegal sentence as a result of his fraud or misrepresentation. In Campbell, the prosecutor in Criminal Court reduced charges of robbery in the first degree and criminal use of a firearm in the first degree on a felony complaint to misdemeanor charges in violation of CPL 180.50 (2) (b) (ii). The defendant pleaded guilty to petit larceny in satisfaction of the charges and was sentenced to nine months in jail. Two weeks after the defendant started serving his sentence, the People moved to vacate the defendant’s conviction on the ground that the charges were illegally reduced and, therefore, the plea and sentence were a nullity. The court granted the People’s motion and reinstated the original charges. However, the Court of Appeals held that "after sentence has commenced, a court which has accepted a plea in violation of the Criminal Procedure Law may not vacate the illegal plea and reinstate the original charges.” (See, Matter of Campbell v Pesce, supra, at 167.)
In Campbell, as in Riggins (supra), the defendants did nothing more than passively accept the illegal plea bargains that were offered. The question of the inherent power of a court to set aside a judgment obtained by fraud and misrepresentation was not an issue in either Campbell or Riggins. Therefore, those cases do not control the decision in this case. (See also, People v Moquin, 77 NY2d 449, 452 [1991] [where the Court of Appeals, citing Matter of Lockett v Juviler, supra, noted that a criminal defendant’s fraud and misrepresentation would allow it to exercise its inherent powers to correct an illegal sentence].)
Furthermore, in Campbell, the People were seeking not only to vacate the sentence but also the guilty plea itself. Vacating the guilty plea has double jeopardy implications. (See, CPL 40.30 [1] [a]; Matter of Campbell v Pesce, supra, at 168; Matter *968 of Lockett v Juviler, supra, at 187.) However, merely vacating an illegal sentence but allowing the defendant to keep the guilty plea entered to a lesser charge does not raise double jeopardy issues. If this were not so, then no sentence could be changed after its imposition, which, as exemplified by CPL 440.40 (1), Minaya, Wright, and Ford (supra), the law, in fact, allows.
The defendant’s reliance on the case of People v Smith (164 Misc 2d 306 [Sup Ct, Richmond County 1995]) is likewise misplaced. In Smith, the defendant was sentenced to one to three years on a plea of guilty to burglary in the third degree. At the time of the defendant’s sentencing, neither the Assistant District Attorney nor the Probation Department’s presentence report indicated that the defendant had any previous felony convictions. However, when the defendant was "asked by the Court Clerk if his name was Jay Smith, the defendant volunteered his alleged real name of Jamel Hasheem.” (Supra, at 307.) Apparently no further inquiries were made, and the court sentenced the defendant as a first offender. More than three years later, the Division of Parole notified the court of the error and requested that the defendant be resentenced. The court declined to resentence the defendant and held that "the error bringing about the illegal sentence was not the clerical or inadvertent mistake of the court and the sentence previously imposed must stand.” (Supra.) The court went on to explain the defendant’s criminal record "would have been readily available had due diligence been exercised, particularly since defendant gave another name at sentencing.” (Supra, at 309.) Based on the spirit of the one-year time limit set forth in CPL 440.40 (1), the court in Smith declined to follow the Fourth Department’s decision in Ford (supra) and found no inherent judicial power to correct illegal sentences after one year unless the mistake was due to a "slip of a tongue” as in People v Wright (supra, at 308).
People v Smith (supra) does not control this case for several reasons. First, unlike Smith, the defendant here never sought to inform the court of his true identity. When asked his name by the clerk in this case, the defendant simply replied: "Robert Ryan.” Although cognizant of his predicate felon status, the defendant did not offer his alias of Keith Kittredge nor did he disclose the fact that he had prior felony convictions on six indictments. Thus, this case is distinguishable on its facts.
Second, there is no explicit requirement that the court, prosecution and the Probation Department must exercise "due dil *969 igence” to uncover a defendant’s fraud within one year or the defendant will be allowed to keep an illegally imposed sentence. While CPL 440.40 (1) may imply that an illegal sentence may not be vacated on the court’s own motion after one year, the court’s inherent power to vacate an illegal sentence obtained by fraud should not be diminished by a broad statutory construction of CPL 440.40 (1). This court respectfully disagrees with the proposition that an illegal sentence imposed as a result of a defendant’s fraud cannot be set aside after one year if, with due diligence, the People or the court should have known the sentence was illegal. The Legislature has not expressly enacted a "due diligence” requirement to discover a defendant’s fraud and misrepresentation with regard to the defendant’s criminal record, although it has enacted "due diligence” requirements in other areas. (See, e.g., CPL 30.30 [4] [c]; 330.30 [3]; 440.10 [1] [g].)
An implied due diligence requirement with regard to CPL 440.40 (1) was rejected by the Court of Appeals in People v Scarbrough (66 NY2d 673 [1985]). In Scarbrough, the Court held that a defendant illegally sentenced as a first felony offender may have that sentence vacated prior to one year pursuant to CPL 440.40 (1), even where the defendant’s status as a predicate felon was known or should have been known at the time. Therefore, the court declines to find an implied due diligence obligation to discover a defendant’s fraud and misrepresentation of his criminal record. It is doubtful that the Legislature intended to allow a defendant who perpetrates this kind of fraud to frustrate the public policy interests in enforcement of the predicate sentencing laws.
Accordingly, based on the statements by the Court of Appeals in Lockett (supra), this court finds that there exists the inherent authority in appropriate cases, such as this, to vacate a judgment obtained by fraud or misrepresentation even after one year. (Accord, People v Ford, supra.)
For the foregoing reasons, in view of the fraud and misrepresentation by the defendant, this court finds that it has the inherent power to vacate the illegally imposed sentences in this case. However, because the defendant may have the option of withdrawing his guilty pleas if the court decides to change the illegal sentence to lengthier legal sentences (People v Ford, supra; cf., People v Smith, NYLJ, Jan. 25, 1996, at 27, col 6, supra), the court will take into consideration the ability of the People to now prosecute these cases if the guilty pleas are withdrawn. Under no circumstances should the defendant *970 be permitted to benefit from his own fraud, even if it means not vacating these illegal sentences. This matter will be set down for a hearing to determine what sentence the court will offer the defendant on each indictment and whether the defendant will elect to accept those sentences or withdraw his guilty pleas and go to trial.