*This opinion is subject to revision before final
publication in the Pacific Reporter*

**2019 UT 11**

IN THE

## SUPREME COURT OF THE STATE OF UTAH

STATE OF UTAH,
*Petitioner,*

*v.*

HONORABLE ANN BOYDEN and BELA A. FRITZ,
*Respondents.*

No. 20170936
Filed March 20, 2019

On Petition for Extraordinary Relief

Third District, Salt Lake
The Honorable Judge Ann Boyden
No. 16192620

Attorneys:

Sean D. Reyes, Att'y Gen., John J. Nielsen, Asst. Solic. Gen.,
Salt Lake City, for petitioner

Brent M. Johnson, Nancy J. Sylvester, Salt Lake City, for respondent
Judge Ann Boyden

Lori J. Seppi, Isaac E. McDougall, Salt Lake City, for respondent
Bela A. Fritz

JUSTICE PEARCE authored the opinion of the Court in which
ASSOCIATE CHIEF JUSTICE LEE, JUSTICE PETERSEN, JUDGE APPLEBY,
and JUDGE POHLMAN joined.

Having recused themselves, CHIEF JUSTICE DURRANT and
JUSTICE HIMONAS did not participate herein.
COURT OF APPEALS JUDGES KATE A. APPLEBY and JILL M. POHLMAN sat.

JUSTICE PEARCE, opinion of the Court:

## INTRODUCTION

¶1    In this somewhat unconventional proceeding, the State seeks to overturn a conviction it recently obtained. The State appears convinced of the defendant's guilt but nevertheless claims it has convicted the wrong person and wants to correct that error. The person the State convicted—that is, the person who was sent to prison for the crime—opposes the State's efforts.

¶2    The district court rebuffed the State's attempt to fix the situation with a motion made under Utah Rule of Civil Procedure 60(b), reasoning that the court had lost jurisdiction over the case and that the State needed to proceed under the Post-Conviction Remedies Act (PCRA). The State petitions us for extraordinary relief and asks that we direct the district court to "exercise jurisdiction over the State's motion for relief under rule 60(b) . . . and vacate the judgment and conviction . . . based upon the defendant's fraud." We conclude that the district court had jurisdiction to adjudicate the State's motion and that rule 60(b), not the PCRA, provides the mechanism through which the State may bring its challenge. We grant the writ and direct the district court to entertain the State's motion.

## BACKGROUND

¶3    The defendant[1] was driving a vehicle that appeared to be unregistered and uninsured when Salt Lake City police pulled him over. During the traffic stop, police searched the vehicle and discovered drugs, drug paraphernalia, and a firearm.

¶4    The defendant allegedly identified himself as Bela Fritz. It is unclear what measures the State undertook to confirm the defendant's identity, but the State apparently followed his lead and believed he was Bela Fritz. The State charged and prosecuted the

---

[1] We use the term "defendant" to refer to the person arrested by the State and presented to the district court as the individual charged with the alleged offenses. That person represented to the court that he was Bela Fritz. He was tried and sentenced under that name. As explained below, *infra* ¶ 14 n.4, the State now believes that the person tried and sentenced in district court was Bela's brother, Aaron. The defendant apparently still claims to be Bela Fritz (but his briefing is, understandably, a little cagey on the topic of his identity). We stick with the moniker defendant to mean the corporeal entity who sat through trial and was sent to prison to serve the sentence.

defendant under the name Bela Fritz.[2] The defendant moved through the criminal justice proceedings as Bela Fritz, at all times representing himself to be that person.

¶5 The State charged Bela Fritz with several offenses: possession of a controlled substance with intent to distribute, a first degree felony, *see* UTAH CODE § 58-37-8(1)(a)(iii); purchase, transfer, possession or use of a firearm by a restricted person, a third degree felony, *see id.* § 76-10-503(3)(a); and possession of drug paraphernalia, a class B misdemeanor, *see id.* § 58-37a-5(1). Following plea negotiations, the State reduced the first offense to attempted possession, a second degree felony. The second offense remained unchanged, and the State dismissed the third offense. The defendant pleaded guilty to the reduced charges. A presentence report was then prepared with respect to Bela Fritz, recommending that he be sentenced to imprisonment for the term directed by statute. *See id.* § 76-3-203(3).

¶6 At sentencing, the district court reduced the judgment of conviction on the first offense to a third degree felony, applying Utah Code section 76-3-402.[3] The district court then ordered that Bela Fritz serve a term of imprisonment of up to five years for each offense, with the sentences to run concurrently. The defendant was then transported to the Utah State Prison.

¶7 When the defendant arrived at the Prison, a Department of Corrections officer allegedly discovered that the defendant was not who he claimed to be. The problem, according to the officer, was that the two men did not look enough alike. During the intake process, the officer viewed a photo of Bela Fritz that the Department had on file and observed that it "did not resemble the person standing in [his] office." The officer then asked the defendant to confirm personal information regarding his identity, and the defendant

---

[2] A pretrial screening report prepared by Criminal Justice Services, however, referred to the defendant as Stephen Larry Fritz.

[3] Section 402 provides that "the court may enter a judgment of conviction for the next lower degree of offense and impose sentence accordingly" if "the court, having regard to the nature and circumstances of the offense . . . and to the history and character of the defendant," and after allowing "any victims . . . and the prosecuting attorney an opportunity to be heard, concludes it would be unduly harsh to record the conviction as being for that degree of offense established by statute." UTAH CODE § 76-3-402(1).

allegedly confessed that he had used Bela Fritz's identity rather than his own. The officer ran the issue up the chain of command, and eventually the State was notified that the Prison believed the defendant was not, in fact, Bela Fritz.

¶8   Less than a month after final judgment had been entered against Bela Fritz, the State returned to the district court claiming the defendant had misled it about his identity. The State moved under Utah Rule of Civil Procedure 60(b) to vacate the conviction, sentence, and judgment. The State informed the district court that the defendant had allegedly "assumed [the] name of another actual person" for purposes of the criminal proceeding. Thus, the State argued, it had erroneously convicted the defendant as "Bela Fritz," and the defendant had been sentenced against the backdrop of Bela Fritz's criminal background.

¶9   The State noted that the Utah Rules of Civil Procedure "govern in any aspect of criminal proceedings where there is no other applicable statute or rule." UTAH R. CIV. P. 81(e). Arguing that no other statute or rule governed these "unusual circumstances," the State asserted that rule 60(b) filled the gap. Applying subsection (b)(3), the State asked the district court to vacate the conviction, sentence, and judgment based on the defendant's fraud, misrepresentation, or other misconduct. *See id.* 60(b)(3). In the alternative, the State urged the district court to invoke subsection (b)(6), which authorizes a court to grant relief from a judgment, order, or proceeding for "any other reason that justifies relief." *Id.* 60(b)(6). The State also moved for a misplea, citing the fraud the defendant allegedly perpetrated on the court.

¶10 The district court denied the motion. The court reasoned that following imposition of a valid sentence, a district court loses subject matter jurisdiction over the case. Accordingly, the court concluded it had no authority to "consider and decide the issues presented." Even if it had jurisdiction, the court noted, "a [r]ule 60(b) set aside and declaration of misplea [would not be] warranted." In the court's view, the PCRA "establishe[d] the sole remedy" for the State to challenge the conviction and sentence. *See* UTAH CODE § 78B-9-102(1)(a). In addition, the court's "authority to rescind acceptance of a guilty plea [was] specifically limited to the window before sentencing and judgment" and "that window [had] closed."

¶11 The State moved the court to reconsider. The State pointed to language in the PCRA authorizing "a person who has been convicted and sentenced for a criminal offense [to] file an action." UTAH CODE § 78B-9-104(1). The State asserted that because it had

been neither convicted nor sentenced, the PCRA offered the State no avenue to relief. The State also claimed that if the sentence and judgment were vacated pursuant to its rule 60(b) motion, the court could also address the State's motion for a misplea.

¶12    Again, the district court denied the motion, concluding that the State had neither asserted the court had jurisdiction nor directed the court to authority to support the exercise of jurisdiction. Undeterred, the State tried again, filing a motion to reconsider the denial of its motion to reconsider. The State asserted that rule 60(b) provided the court with jurisdiction to consider the issues the State had raised. And the State implored the court to act because "the Defendant's fraudulent act of obtaining a conviction in the name of another, real person" had resulted in an "innocent person now ha[ving] a record of conviction for enhanceable crimes, including a violent felony."

¶13    The third time was not a charm. The district court again declined. Citing its earlier ruling, the court rejected rule 60(b) as a basis for jurisdiction or relief. This time, however, the court refused to address whether the State might obtain relief through a PCRA petition, stating the issue was an "abstract" question "not properly before" it. The conviction, sentence, and judgment against Bela Fritz were thus left intact even though the State allegedly had reason to believe that Bela Fritz was not the person convicted and sent to prison.

¶14    The State then filed a petition for extraordinary relief in this court, invoking Utah Rule of Civil Procedure 65B. The State asks that we direct the district court to "exercise jurisdiction over the State's motion for relief under rule 60(b)."[4] The State also asks that we

---

[4] In its petition, the State includes additional allegations regarding the defendant's identity. The State claims the defendant is Bela Fritz's brother, Aaron. According to the State, Aaron Fritz was arrested in the underlying case while on probation in another matter. Comparing Aaron Fritz's alleged criminal history with Bela's, the State argues that the defendant would have been charged differently and would have received a different plea bargain offer, had his identity been known. The State also posits that the defendant would not have received a reduction at sentencing under Utah Code section 76-3-402. The State thus claims the defendant was treated differently—and more favorably—based on his alleged assumption of Bela Fritz's identity.

vacate the conviction, sentence, and judgment against Bela Fritz because of the defendant's alleged fraud. The State asserts that although such relief would usually be left to the district court on remand, "this is a rare case in which all of the equities favor" taking that course of action here.

## STANDARD OF REVIEW

¶15   An aggrieved person, or a person whose interests are threatened, may petition this court for relief if a lower court abuses its discretion or exceeds its jurisdiction and "no other plain, speedy and adequate remedy is available." UTAH R. CIV. P. 65B(a), (d). Unlike parties pursuing direct appeals, however, a petitioner who demonstrates such error "has no right to receive a remedy that corrects [the] lower court's mishandling of [the] particular case." *State v. Barrett*, 2005 UT 88, ¶ 23, 127 P.3d 682. Whether relief is granted is within our "sound discretion." *Id.* We consider several factors to decide whether to grant a petition, such as the egregiousness of the error, the significance of the legal issue, and the severity of the consequences resulting from the error. *Id.* ¶ 24.

¶16   When addressing a petition that asserts error in judicial proceedings, our review is limited to "determin[ing] whether the [lower court] has regularly pursued its authority." UTAH R. CIV. P. 65B(d)(4). The issue here concerns whether the district court regularly pursued its authority or abused its discretion in denying the State's motion for relief under Utah Rule of Civil Procedure 60(b). "A district court has broad discretion in ruling on a motion to set aside an order or judgment under rule 60(b)." *In re Willey*, 2016 UT 53, ¶ 5, 391 P.3d 171 (citation omitted) (cleaned up). Thus, we generally "review a district court's denial of a 60(b) motion under an abuse of discretion standard." *Id.* (citation omitted).

¶17   Before us, the district court asserts that a court does not abuse its discretion when it declines to apply a legal principle in a novel fashion. According to the district court, unprecedented applications of legal rules or principles would result in new law, and a court does not abuse its discretion when it refuses to create new law.

¶18   This misstates the discretion a district court possesses. Although we sympathize with a district court that finds itself ruling on a novel issue of law with little guidance, a district court's discretion does not extend to refusing to rule because the question presented is one of first impression. District courts are often called upon to play the role of legal frontiersmen and women. Such a role is undoubtedly a challenging one. But it is one district courts are

constitutionally required to undertake. Full and fair adjudication of a matter necessitates that district courts wrestle with questions of first impression, identify the governing legal principles, and apply them to the facts of the case. Whether the court's conclusion would be reviewed deferentially or de novo in no way alters its responsibility to undertake that inquiry.

¶19   Misapplication of the law constitutes an abuse of discretion. *See, e.g.*, *State v. Lowther*, 2017 UT 34, ¶¶ 17, 45, 398 P.3d 1032 ("A district court abuses its discretion when it admits or excludes evidence under the wrong legal standard." (citation omitted) (internal quotation marks omitted)); *Johnson v. Johnson*, 2014 UT 21, ¶ 24, 330 P.3d 704 ("[T]he district court applied the wrong legal standard, and in so doing, abused its discretion."); *State v. Ramirez*, 2012 UT 59, ¶ 7, 289 P.3d 444 ("Applying the wrong legal standard, however, will always exceed whatever limited discretion the magistrate has in the bindover decision."); *Archuleta v. Galetka*, 2011 UT 73, ¶ 152, 267 P.3d 232 ("A decision premised on flawed legal conclusions . . . constitutes an abuse of discretion." (citation omitted)); *Taylor-W. Weber Water Improvement Dist. v. Olds*, 2009 UT 86, ¶ 3, 224 P.3d 709 ("The district court abuses its discretion when it relies on an erroneous conclusion of law to come to its decision."); *Menzies v. Galetka*, 2006 UT 81, ¶ 55, 150 P.3d 480 ("If a district court's ruling on a 60(b) motion is based on clearly erroneous factual findings or flawed legal conclusions, the district court has likely abused its discretion."); *Barrett*, 2005 UT 88, ¶ 17 ("As a general matter, we agree with the proposition that the abuse-of-discretion standard of review will at times necessarily include review to ensure that no mistakes of law affected a lower court's use of its discretion."); *Lund v. Brown*, 2000 UT 75, ¶ 9, 11 P.3d 277 ("A decision premised on flawed legal conclusions, for instance, constitutes an abuse of discretion.").

¶20   The defendant asserts that abuse of discretion occurs only in more limited circumstances, such as when a decision shocks one's sense of justice or results from bias, prejudice, or malice. But that is a misstatement of the law.

¶21   When district courts have discretion to weigh factors, balance competing interests, or otherwise choose among a range of permissible approaches or outcomes, those discretionary determinations must rest upon sound legal principles. For that reason, when a legal conclusion is embedded in a district court's discretionary determination, we peel back the abuse of discretion standard and look to make sure that the court applied the correct law. *See, e.g.*, *Gardiner v. Taufer*, 2014 UT 56, ¶ 23, 342 P.3d 269 ("[W]e

review the district court's legal conclusions in the context of a rule 60(b) ruling for correctness."); *see also, e.g., Rodriguez v. Kroger Co.,* 2018 UT 25, ¶ 11, 422 P.3d 815 (noting that although "[a] trial court's decision . . . is reviewed under an abuse of discretion standard . . . , whether the district court applied the appropriate standard . . . presents a legal question that we review for correctness" (citations omitted) (internal quotation marks omitted)); *McLaughlin v. Schenk,* 2013 UT 20, ¶ 19, 299 P.3d 1139 (noting that although "application of the law of the case doctrine is ordinarily reviewed under an abuse of discretion standard . . . , when a legal question is presented to an appellate court in law-of-the-case packaging, the abuse of discretion standard must yield to the correctness standard of review" (citations omitted) (internal quotation marks omitted)).

¶22 We apply that approach here. We review for correctness the legal conclusions embedded in the district court's denial of the State's rule 60(b) motion. We then determine whether the court abused its discretion or regularly pursued its authority in denying the motion. Finally, we consider whether to exercise our discretion to grant the writ and instruct the district court to correct its error.

## ANALYSIS

### I. The District Court Abused Its Discretion When It Declined to Exercise Jurisdiction over The State's Rule 60(b) Motion

¶23 The State moved for relief under Utah Rule of Civil Procedure 60(b)(3), which provides that "[o]n motion and upon just terms, the court may relieve a party or its legal representative from a judgment, order, or proceeding for . . . fraud (whether previously called intrinsic or extrinsic), misrepresentation or other misconduct of an opposing party."[5] The district court concluded that it lacked

---

[5] None of the parties to this proceeding challenge the State's use of Utah Rule of Civil Procedure 65B to seek extraordinary relief. And we agree with the State that "no other plain, speedy and adequate remedy [was] available." *See* UTAH R. CIV. P. 65B(a). Although the State may appeal an "illegal sentence," UTAH CODE § 77-18a-1(3)(k), here the State challenges the proceeding as a whole, including the conviction. *Cf. State v. Candedo,* 2010 UT 32, ¶ 9, 232 P.3d 1008 (interpreting "illegal sentence" as the term appeared in Utah Rule of Criminal Procedure 22(e), and noting that a challenge to an illegal sentence may not "be used as a veiled attempt to challenge the underlying conviction"); *State v. Brooks,* 908 P.2d 856, 860 (Utah 1995)

(continued . . .)

jurisdiction to consider the motion, and even if it had jurisdiction, the PCRA provided the State's sole remedy for pursuing its challenge. Both of these conclusions present questions of law, and we review them for correctness.

¶24 The district court erred in both respects. The State could seek relief under rule 60(b) because neither the PCRA nor any other statute or rule governs this aspect of the criminal proceeding. And rule 60(b) provided the court with jurisdiction to consider the State's motion. This misapplication of the law infected the district court's rulings, and the court thus abused its discretion in denying the State's motion.

*A. The State Properly Moved Under Utah Rule of
Civil Procedure 60(b) to Challenge the Defendant's
Conviction, Sentence, and Judgment*

¶25 Criminal matters are governed primarily by the Utah Rules of Criminal Procedure. But those rules are not comprehensive. When looking to fill the gaps between those rules, the Utah Rules of Civil Procedure instruct that "[t]hese rules of [civil] procedure shall also govern in any aspect of criminal proceedings where there is no other applicable statute or rule, provided, that any rule so applied does not conflict with any statutory or constitutional requirement." UTAH R. CIV. P. 81(e).

¶26 The question then is whether the State may avail itself of Utah Rule of Civil Procedure 60(b) in a criminal proceeding to challenge a conviction, sentence, and judgment allegedly entered against an innocent person because a defendant misrepresented his or her identity. In their responses to the petition, the district court and the defendant assert the State categorically may not. They claim

---

(interpreting "illegal sentence" as the term appeared in Utah Rule of Criminal Procedure 22(e), and noting that "[a] request to correct an illegal sentence . . . presupposes a valid conviction"). The State may also "seek discretionary appellate review of any interlocutory order entered before jeopardy attaches." UTAH CODE § 77-18a-1(4). But the denial of the State's rule 60(b) motion was not interlocutory. *See Migliore v. Livingston Fin., LLC*, 2015 UT 9, ¶ 17, 347 P.3d 394 ("It is well settled that an order denying relief pursuant to [r]ule 60(b) is generally a final appealable order." (quoting *Mascaro v. Davis*, 741 P.2d 938, 946 (Utah 1987))). Whether the denial was also entered after jeopardy attached is not a question to which the parties have paid much attention, and we leave its resolution for another day.

that rule 60(b) applies only to a party who lost its case and that allowing the State to move under rule 60(b) would enable the State to seek otherwise impermissible relief. Additionally, in the proceeding below, the district court concluded that the State could raise its challenge only through the PCRA, not rule 60. We disagree. Relief is not available to the State under the PCRA. And the State may utilize rule 60(b) to bring the challenges it has asserted in this case.

¶27　Rule 60(b) provides that "[o]n motion and upon just terms, the court may relieve a party or its legal representative from a judgment, order, or proceeding" for several reasons, including "fraud . . . , misrepresentation or other misconduct of an opposing party." UTAH R. CIV. P. 60(b). Contrary to the arguments the district court and the defendant make, nothing in the rule limits its use to a party who lost. Although we have commented that "[r]ule 60(b) is designed to provide relief to a party that has lost its case," *Kell v. State*, 2012 UT 25, ¶ 18, 285 P.3d 1133, our statement noted the rule's general purpose and common application—and was not definitive commentary on the rule's reach.

¶28　In *Kell*, we addressed whether a party could file a motion under rule 60(b), and under subsection (b)(6) in particular, following an appellate court's affirmance of the underlying judgment. *Id.* ¶¶ 17–18, 21; *see also* UTAH R. CIV. P. 60(b)(6) (authorizing a court to provide relief from a judgment or order for "any other reason that justifies relief"). As part of that discussion, we noted that rule 60(b) provides a vehicle for relief for unsuccessful parties and emphasized that "[t]he remedies provided by rule 60(b) should not be understood to be a substitute for appeal." *Kell*, 2012 UT 25, ¶ 18 (citation omitted) (internal quotation marks omitted). We concluded that we would "allow a 60(b) motion after an appellate court has affirmed the underlying judgment only in unusual and exceptional circumstances." *Id.* ¶ 21 (internal quotation marks omitted). And "those unusual and exceptional circumstances would have to be circumstances that did not manipulate or circumvent the" PCRA. *Id.* ¶ 22 (internal quotation marks omitted). We did not consider whether rule 60(b) could be used by a prevailing party, and we were not attempting to set any such limits on the rule's scope or application. *See id.*

¶29　*Kell* is nevertheless instructive to the question before us. In *Kell*, the district court read into rule 60(b) a requirement not present in the rule's text, namely, that a case must be "pending" at the time the motion is filed. *Id.* ¶ 16. We rejected that requirement after considering the rule's broader purpose: "The rule seeks to strike a

delicate balance between two countervailing impulses: the desire to preserve the finality of judgments and the incessant command of the court's conscience that justice be done in light of all the facts." *Id.* ¶ 16 (citation omitted) (internal quotation marks omitted). Rule 60(b)'s "whole purpose is to make an exception to finality," *id.* (citation omitted), when the strong interest in the finality of judgments is outweighed by the paramount importance of preserving our courts as arbiters of just and equitable proceedings.

¶30   Here, as in *Kell*, rule 60(b) does not support reading into it an additional, nontextual requirement—that only nonprevailing parties may invoke it. When, for example, the discovery of fraud, misrepresentation or other misconduct undermines a court's confidence that a judgment resulted from a just and fair proceeding, the interest in preserving the judgment gives way, regardless of which party discovered the fraud and attempted to undo it. Accordingly, prevailing parties are not categorically barred from filing motions under rule 60(b).

¶31   The district court and the defendant assert that by allowing the State to seek relief under rule 60(b) in this case, we are "permit[ting] the State to seek relief from a judgment for other rule 60(b) reasons" and "arguably open[ing] the door for the State to challenge an acquittal." We are unpersuaded by the argument that if we permit the State to move under rule 60(b), we are opening Pandora's box. Our decision does not upend any existing limits on the State's ability to challenge a final judgment in a criminal case. And it should not be read so broadly.

¶32   By the civil rules' plain language, the State may invoke rule 60(b) to challenge a judgment only if "there is no other applicable statute or rule, provided, that any rule so applied does not conflict with any statutory or constitutional requirement." UTAH R. CIV. P. 81(e). We thus address whether any other rule of criminal procedure applies, as well as whether the PCRA precludes the State from moving under rule 60(b), as the district court concluded.

¶33   Our rules of criminal procedure contain only one provision authorizing a postsentencing challenge on nonclerical grounds. Rule 22(e) permits a district court to correct a sentence that "exceeds the statutorily authorized maximums;" "is less than statutorily required minimums;" "violates Double Jeopardy;" "is ambiguous as to the time and manner in which it is to be served;" "is internally contradictory;" or "omits a condition required by statute or includes a condition prohibited by statute." UTAH R. CRIM. P. 22(e). None of these circumstances are present here. And neither rule 22(e) nor any

other rule of criminal procedure prohibits other postsentencing challenges to a conviction, sentence, or judgment.

¶34 Rule 60(b) may therefore fill that gap in our criminal rules and allow a challenge that falls within the rule's provisions, so long as application of the rule does not conflict with a statutory or constitutional requirement.[6] *See* UTAH R. CIV. P. 81(e). The district court properly considered the PCRA as a possible source of conflict. As we have noted, "The PCRA and rule 60(b) can be in direct conflict." *Kell*, 2012 UT 25, ¶ 25. The PCRA "establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense and who has exhausted all other legal remedies," and "replaces all prior remedies for review, including extraordinary or common law writs." UTAH CODE § 78B-9-102(1)(a). Thus, while "the PCRA does not fully extinguish the relevance of rule 60(b)," *see Kell*, 2012 UT 25, ¶ 25, it limits the rule's application. But the PCRA does not apply to the State and thus does not limit the rule's application here.[7]

---

[6] Other states have reached this same conclusion in similar circumstances. *See, e.g.*, *People v. Martinez*, 350 P.3d 986, 992–94 (Colo. App. 2015) (construing the prosecution's argument as a motion to reconsider under rule 60(b), noting that although "[t]here is no applicable rule of criminal procedure permitting a trial court to reconsider an order dismissing a criminal case," the state's rules of criminal procedure "permit[] a court to look to the rules of civil procedure in the absence of an applicable criminal rule"); *State v. Brown*, No. 13 MA 172, 2014 WL 7475170, at *12, *14 (Ohio Ct. App. Dec. 29, 2014) (concluding that "a Civ.[]R. 60(B) motion to vacate a dismissal order can be filed by the state via Crim. R. 57(B)," which provides that a court "shall look to the rules of civil procedure and to the applicable law if no rule of criminal procedure exists" (citation omitted)).

[7] This may be the first time we have considered whether the State can move for relief under rule 60(b) in a criminal matter. But criminal defendants have previously employed the rule when seeking postconviction relief. In *Menzies v. Galetka*, a death row inmate moved under rule 60(b) to overturn the dismissal of his petition for postconviction relief. 2006 UT 81, ¶ 2, 150 P.3d 480. We concluded that he was "entitled to rule 60(b)(6) relief due to the extraordinary circumstances of [his attorney's] ineffective assistance of counsel and grossly negligent representation." *Id.* ¶ 118. In *Kell*,

(continued . . .)

¶35 Although the PCRA "establishes the sole remedy for any person who challenges a conviction or sentence for a criminal offense," UTAH CODE § 78B-9-102(1)(a), it only authorizes the filing of petitions by persons convicted or sentenced, *id.* § 78B-9-104(1). Challenges may be brought only by "a person who has been convicted and sentenced for a criminal offense." *Id.* The State is not such a person.

¶36 Moreover, the PCRA establishes a framework under which the State may *respond* to petitions for relief. Under section 78B-9-106, a PCRA claim must meet certain procedural and time limitations, and in opposing the claim, "[t]he *state* may raise" those limitations "at any time." *Id.* § 78B-9-106(1), (2)(a) (emphasis added). In addition, section 78B-9-108 equates the respondent opposing a PCRA petition with the governmental entity that obtained the conviction or sentence. *Id.* § 78B-9-108(3)(d) (providing that "[i]f the *respondent* gives notice that it intends to retry or resentence the petitioner, the trial court may order any supplementary orders . . . that may be necessary" (emphasis added)).

¶37 The PCRA thus does not authorize the State to challenge a conviction or sentence as the district court suggested. Because the State lacked another path to bring this issue before the court, the State properly invoked rule 60(b).[8]

---

we affirmed the denial of the defendant's rule 60(b) motion seeking relief from the dismissal of his petition for postconviction relief, but as noted above, we remarked that "the PCRA does not fully extinguish the relevance of rule 60(b)." *Kell*, 2012 UT 25, ¶¶ 1, 25.

[8] We note an interesting question that we do not reach today. A rule 60(b)(3) motion must be brought within ninety days of judgment. *See* UTAH R. CIV. P. 60(c) (requiring that any motion brought under subsections (b)(1), (2), or (3) "be filed within a reasonable time and . . . not more than 90 days after entry of the judgment or order" at issue). And here, the State discovered the alleged fraud and brought its motion within that period.

Nothing we say today should be interpreted as a concession that the State is without a mechanism to address a defendant's misrepresentation if the State discovers it more than three months after the entry of judgment. We have acknowledged that rule 60 "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order or proceeding or to set aside a judgment for fraud upon the court." UTAH R. CIV. P. 60(d).

(continued . . .)

*B. Rule 60(b) Grants the District Court
Jurisdiction to Consider the State's Motion*

¶38    The district court concluded that it could not consider the State's rule 60(b) motion because it lacked jurisdiction to do so. The district court cited the general rule that "[o]nce a court imposes a valid sentence and final judgment is entered, the court . . . loses subject matter jurisdiction over the case." *State v. Rodrigues*, 2009 UT 62, ¶ 13, 218 P.3d 610. Based on this principle, all of the parties to this proceeding assume that upon entry of the judgment against Bela Fritz, the district court lost subject matter jurisdiction over the matter. That may well have been the case.[9] But even assuming the

------

Although we need not reach the question, we note that we, as well as others, have acknowledged that courts have inherent authority to set aside judgments obtained through fraud on the court. *See, e.g.*, *Weber Cty. v. Chambers*, 2001 UT 53, ¶ 7, 28 P.3d 694 ("[A]ppellate courts certainly have within their purview the right to raise, sua sponte, the issue of fraud on the court . . . ."); *State v. Schreiber*, 245 P.2d 222, 223 (Utah 1952) (noting that a district court has authority to vacate an order or judgment procured by fraud); *see also, e.g.*, *United States v. Bishop*, 774 F.2d 771, 774 (7th Cir. 1985) (concluding that the district court properly exercised its inherent authority to correct an order modifying a sentence, which had been obtained due to the defendant's misrepresentation); *Goene v. State*, 577 So. 2d 1306, 1309 (Fla. 1991) (addressing double jeopardy issues related to a defendant's "fraud upon . . . the court by falsely stating his identity" and stating that "orders, judgments, or decrees which are the product of fraud, deceit, or collusion may be vacated, modified, opened or otherwise acted upon at any time" (emphasis omitted) (citation omitted) (internal quotation marks omitted)); *People v. Ryan*, 640 N.Y.S.2d 978, 982, 984 (Sup. Ct. 1996) (concluding that the district court had inherent authority to vacate an illegal sentence obtained through the defendant's "fraud and misrepresentation of his name and past criminal record"); *State v. Foster*, 484 N.W.2d 113, 116–17 (N.D. 1992) (concluding, when addressing a defendant sentenced under an assumed name, that the district court had inherent authority to correct judgments obtained through fraud).

[9] We recognize the potential dissonance in the State's position that every aspect of the criminal proceeding was disrupted by the defendant's alleged misrepresentation of his identity, yet entry of the sentence against Bela Fritz was sufficient to wrest the district court of

(continued . . .)

district court's broad subject matter jurisdiction expired at that time, the State's motion under Utah Rule of Civil Procedure 60(b) provided the court with jurisdictional authority to investigate the issues raised.

¶39 Under our procedural rules, district courts retain jurisdiction to address certain matters postsentencing and postjudgment. Under the Utah Rules of Criminal Procedure, a district court may arrest judgment prior to entry of a sentence, correct a sentence if it embodies certain defects, stay a sentence pending appeal, and correct clerical mistakes. UTAH R. CRIM. P. 22, 23, 27, 30. Under the Utah Rules of Civil Procedure, a district court may correct clerical mistakes or relieve a party from a judgment under certain circumstances. UTAH R. CIV. P. 60(a)–(c). District courts may also entertain an independent action for relief from a judgment, order, or proceeding due to fraud on the court. *Id.* 60(d).

¶40 In each of these circumstances, a district court is taking action in a proceeding that has otherwise concluded, when we might expect jurisdiction over the case to have expired. Moreover, from time to time, we alter our rules of procedure, changing the circumstances under which a district court may exercise jurisdiction post judgment or post sentencing. When we do so, and redefine the limits of district courts' jurisdiction based on the language of a particular rule, we are not referring to constitutional limits on judicial authority. We are using the term "jurisdiction" to refer to the principles, developed via rule-making procedures or embedded in our case law, through which we regulate the proceedings that take place in our courts. And we grant those rules "jurisdictional" status. *See State v. Lara*, 2005 UT 70, ¶ 12, 124 P.3d 243.

¶41 Thus, as a matter of practice, we speak of such limits on judicial authority as "jurisdictional." "For example, when [this court] turn[s] away an untimely filed appeal on the grounds that we do not have jurisdiction to entertain it, we are granting 'jurisdictional' effect

─────────────────

subject matter jurisdiction. This potential dissonance is sharpest with respect to the State's alternative claim that the conviction, sentence, and judgment are void under subsection (b)(4). *See* UTAH R. CIV. P. 60(b)(4). We do not reach the issue because rule 60(b) conferred jurisdiction on the district court to consider the State's motion. But we note our case law suggesting that a void sentence would not divest a district court of jurisdiction. *See State v. Lim*, 79 Utah 68, 7 P.2d 825 (1932).

to our own rules of procedure." *Id.* We have likewise spoken in terms of "jurisdiction" when stating that, as a general rule, a court loses subject matter jurisdiction over a case after it imposes a valid sentence and final judgment is entered. *See, e.g.*, *Rodrigues*, 2009 UT 62, ¶ 13. That "jurisdictional" principle is not of constitutional origin. It is subject to overrides or exceptions set forth in our case law and in our rules of procedure. *See Ralphs v. McClellan*, 2014 UT 36, ¶ 27, 337 P.3d 230.

¶42 Utah Rule of Civil Procedure 60(b) is such a rule. And when a party moves under rule 60(b), following imposition of a sentence and entry of final judgment, a district court has jurisdiction to consider the motion. No other "specific" grant of authority is needed, as the district court mistakenly suggested. The district court therefore erred in concluding that it lacked jurisdiction to consider the State's rule 60(b) motion.

## II. Given the Important Questions and Consequences at Issue, We Exercise Our Discretion and Grant the Writ

¶43 Having concluded the district court abused its discretion, we must determine whether to grant the State's petition. As noted above, we have "outlined a number of nonexclusive factors a court may consider in deciding whether to grant a petition for extraordinary relief." *Gilbert v. Maughan*, 2016 UT 31, ¶ 16, 379 P.3d 1263. "These factors include 'the egregiousness of the alleged error, the significance of the legal issue presented by the petition, [and] the severity of the consequences occasioned by the alleged error . . . .'" *Id.* (quoting *State v. Barrett*, 2005 UT 88, ¶ 24, 127 P.3d 682). Additional factors may color or control our analysis, *see id.* ¶¶ 18, 20, and in each instance, the determination of whether to grant relief is tailored to the proceeding's particular issues and circumstances.

¶44 Here, the significance of the legal issues presented and the consequences of leaving the error uncorrected provide ample reason to grant the petition. A defendant's misrepresentation of his or her identity is an illicit attempt to game the criminal justice system. It carries with it troubling consequences. If unchecked, the defendant's conduct may result in a conviction being recorded against another. In addition, the defendant's sentence may not be tailored to his or her background, criminal history, or mental or physical health. The sentence may fall well short of legislative requirements in terms of punishment and deterrence. And public safety may be put at risk. The State is obstructed in the exercise of its prosecutorial discretion, and district courts cannot determine appropriate sentences, when

operating against a backdrop of misinformation regarding a defendant's identity.

¶45 Accordingly, we exercise our discretion to grant the State's petition. We do not, however, grant all the relief the State seeks. We decline to determine in the first instance that the defendant misrepresented his identity. "[T]he challenged proceedings are judicial in nature," and our review extends no "further than to determine whether the [district court] has regularly pursued its authority." UTAH R. CIV. P. 65B(d)(4). Having concluded the district court failed to regularly pursue its authority in declining to exercise jurisdiction over the State's rule 60(b) motion, we instruct the court to do so and vacate the order denying the State's motion. But we do not direct the district court to grant the motion and we offer no opinion as to the motion's merits.[10]

## CONCLUSION

¶46 The State may move under Utah Rule of Civil Procedure 60(b) to undo a conviction allegedly obtained on the basis of fraud, misrepresentation, or other misconduct. Rule 60(b) confers jurisdiction on a district court to adjudicate such a motion. The district court therefore abused its discretion by declining to exercise jurisdiction over the State's rule 60(b) motion in the underlying criminal proceeding. Given the important questions and consequences at issue, we grant the State's petition, vacate the order denying the State's rule 60(b) motion, and instruct the district court to exercise jurisdiction over the matter.

_____

[10] The State advocated in its rule 60(b) motion for a misplea but has not highlighted that request in its arguments to this court. We do not substantively address the misplea question, but instruct the district court to exercise jurisdiction over the State's rule 60(b) motion, including the State's arguments seeking a misplea.